**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
_____
                               )
                               )
Equal Rights Center, et al.,   )
                               )
              Plaintiffs,      )
       v.                      )   Civil Action No. 07-cv-01823-RMC
                               )
                               )
ZIPCAR INC., et al.            )
                               )
              Defendants,      )
_____)
```

**NOTICE OF RELATED CASE**

Pursuant to Local Rule LCvR 40.5, Defendant, District of Columbia ("the District") through undersigned counsel, gives notice of a related case. Plaintiffs, in the above captioned action allege that together, the District of Columbia, the District of Columbia's Director of Department of Transportation (DDOT), Emeka C. Moneme, and corporate Defendants violated Titles II and III of the Americans with Disabilities Act, 42 U.S.C. § 12181, 12132, as well as the D.C. Human Rights Act, D.C. Code § 2-1401.01. Specifically, Plaintiffs allege that the District Defendants violated the Acts by "providing cost-free parking spaces throughout the District of Columbia" to the corporate Defendant. A true and correct copy of the complaint in the related case, *Equal Rights Center, et al., v. Mobility, Inc. d/b/a Flexcar, et al.,* Civil Action No. 07-01824 (JDB) is attached hereto and is identical to the above-captioned complaint, except for the name of the corporate defendant.

                                                                    Respectfully submitted,

                                                                     LINDA SINGER
                                                                     Attorney General for the District of Columbia

        GEORGE C. VALENTINE
        Deputy Attorney General
        Civil Litigation Division

        _____/s/_____
        ELLEN EFROS,
        Assistant Attorney General [250746]
        Chief, Equity I

        _____/s/_____
BY:   DENISE J. BAKER [493414]
        Assistant Attorney General
        Equity I Section
        Civil Litigation Division
        441 4th Street, N.W.
        Washington, DC 20001
        (202) 442-9887 (telephone)
        (202) 727-0431 (facsimile)
        Email: denise.baker@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EQUAL RIGHTS CENTER<br>11 Dupont Circle NW<br>Suite 400<br>Washington, DC 20036-1226<br><br>ROSEMARY CIOTTI, RN, MSN<br>900 N. Stafford Street, #2322<br>Arlington, VA 22203<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>MOBILITY, INC., D/B/A "FLEXCAR"<br>140 Q Street NE<br>Suite 200<br>Washington, DC 20002,<br><br>DISTRICT OF COLUMBIA<br>Office of the Secretary of the<br>District of Columbia<br>441 Fourth Street, NW<br>Suite 1130<br>Washington, DC 20001 and<br><br>EMEKA C. MONEME, DIRECTOR<br>DISTRICT DEPARTMENT OF<br>TRANSPORTATION<br>2000 14th Street, NW, 6th Floor<br>Washington, DC 20009<br><br>　　　　　　Defendants. | Docket No._____<br><br>COMPLAINT<br><br>Jury Trial Demanded |

## NATURE OF THE CASE

1. This action arises out of unlawful discrimination by defendant Mobility, Inc., d/b/a "Flexcar" ("Flexcar") in the form of policies, practices, and/or architectural barriers that

prevent individuals with disabilities from enjoying the services and facilities offered by Flexcar throughout the Washington D.C. metropolitan area. The Equal Rights Center ("ERC") and Rosemary Ciotti (collectively "Plaintiffs") seek injunctive relief from violations of the Americans with Disabilities Act, 42 U.S.C. § 12132 *et seq.* ("ADA"), and money damages and injunctive relief for violations of the District of Columbia Human Rights Act, D.C. Code § 2-1401.01 *et seq.* ("DCHRA"). Plaintiffs bring this action under Title III of the ADA, 42 U.S.C. §12181 *et seq.* and the DCHRA against Flexcar. The Plaintiffs also bring this action under Title II of the ADA, 42 U.S.C. §12132 *et seq.* and the DCHRA to challenge the policy and practice of the District of Columbia (the "District") and its Department of Transportation ("DOT") (collectively "District Defendants") for providing cost-free parking spaces throughout the District of Columbia to Flexcar, further enabling this unlawful discrimination against individuals with disabilities.

2.  Plaintiffs, by their undersigned counsel, allege the following upon actual knowledge with respect to themselves and upon information and belief, against Flexcar and the District Defendants.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Plaintiffs' claims arising under District of Columbia law pursuant to 28 U.S.C. § 1367.

4.  Venue properly lies before this Court pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5.  The ERC is a not-for-profit membership corporation duly organized under the laws of the District of Columbia, with its principal place of business in the District of Columbia. The ERC's membership is composed of individuals, many of whom are persons with disabilities

as defined by the ADA, 42 U.S.C. § 12102(2), and the DCHRA, D.C. Code § 2-1401.02(5A), who wish to use Flexcar's car sharing services and facilities.

6. The ERC seeks to eliminate discrimination on the basis of disability and to promote equal access to all goods, services, facilities, privileges and advantages of public entities and public accommodations. One of the reasons people with disabilities join the ERC is to further these purposes. The ERC pursues these purposes and goals through various means, including research, public education, counseling and conciliation, and litigation. The ERC's organizational purpose is adversely affected by Flexcar's failure to ensure equal access to its car sharing services and facilities and the District Defendants' further enabling of this discrimination through subsidized parking. The ERC is unable to assure its members that they will be able to partake in Flexcar's car sharing services and facilities on an equal level with persons without disabilities. Moreover, its members suffer direct and concrete injuries because they are denied the opportunity to utilize Flexcar's car sharing services and facilities equally with that afforded persons without disabilities.

7. Plaintiff Rosemary Ciotti, a natural person and citizen of the United States, is a resident of Virginia and a member of the ERC. Ms. Ciotti uses a wheelchair because of lupus and resulting neurological dysfunction that substantially limits her in the major life activity of walking. Ms. Ciotti is a person with a disability as defined by the ADA and the DCHRC.

8. Upon information and belief, defendant Flexcar is a privately owned corporation formed under the laws of the State of Washington, with its principal place of business in the State of Washington, at 307 Third Avenue S., Suite 220 Seattle, WA 98104.

9. Upon information and belief, Flexcar also has a Washington D.C. regional office and its executive offices at 140 Q Street NE, Suite 200, Washington, D.C. 20002.

10. Presently, Flexcar operates in twelve regions across the country, the Atlanta, Baltimore, Chicago, Gainesville, Los Angeles, Philadelphia, Pittsburgh, Portland, San Diego, San Francisco, Seattle, and the Washington D.C. regions.

11. Upon information and belief Flexcar has over three hundred vehicles available for its car sharing services in the Washington D.C. region. Members can pick up a shared car at numerous strategic and convenient locations throughout the Washington D.C. metropolitan area: Adams Morgan (North of Euclid St.), Adams Morgan (South of Euclid St.), Anacostia, Bellevue (Southeast), Benning Rd (Northeast), Brentwood, Brightwood Park, Brooklawn/Fort Totten, Capitol Hill (Northeast), Capitol Hill (Southeast), Capitol View, Carver, Chinatown, Cleveland Park, Columbia Heights, Downtown, Dupont Circle, Eckington, Farragut Square, Florida Ave. (Northeast), Foggy Bottom, Friendship Heights, Georgetown, Hill East, Judiciary Square, L'Enfant Plaza, Logan Circle, Manor Park, Minnesota Ave. (Northeast), Mount Pleasant, Near Northeast, New York Ave. (Northeast), Petworth/Georgia Ave., Rhode Island Ave. Metro, Scott Circle, Shaw/Mt. Vernon/LeDroit Park, Southwest, Stanton Park, Takoma Park, U Street, Union Station, Van Ness, Wisconsin Avenue, and Woodley Park; Maryland: Bethesda, College Park & University of Maryland, Friendship Heights, Prince George's County, Rockville Pike, Silver Spring/Wheaton, Takoma Park and the University of Maryland; Virginia: Alexandria, Ballston, Clarendon, Columbia Pike, Court House, Crystal City, Fairfax County, Falls Church, Mark Center, Pentagon City, Rosslyn, Shirlington, and Virginia Square; and, at over 50 Metro stops along the Blue Line, Green Line, Orange Line, Red Line and Yellow Line.

12. The District is a municipal entity organized under the Constitution and the laws of the United States of America.

13. Defendant Emeka C. Moneme, in his official capacity, is the Director of the DOT, an agency of the District. The DOT is responsible for managing and maintaining the District's transportation infrastructure, which includes an initiative to reduce congestion and parking problems through innovative transportation options, such as car sharing.

## STATEMENT OF FACTS

14. Flexcar is a car-sharing service.

15. Individuals wishing to join Flexcar must complete a membership application and pay a fee, which provides them access to shared vehicles of various makes and models.

16. Members also select a rate plan, requiring them to pay for the use of a Flexcar vehicle on an hourly or daily basis or by paying a set monthly fee, or a combination of both.

17. Upon information and belief, after joining Flexcar, a member receives a membership number, a Flexcard, which is the electronic key to access a reserved vehicle, and a Flexcar member manual.

18. Upon information and belief, after a member makes a reservation for a vehicle at one of the above locations, he or she simply retrieves said vehicle from its designated, free parking space. When the member is finished using said vehicle, he or she returns it to the same designated, free parking space.

19. Upon information and belief, since 2005, the District Defendants provided a number of strategically placed curbside parking spaces at many of the above-mentioned locales designated for the exclusive use by car sharing vehicles, at no cost to Flexcar.

20. Ms. Ciotti has a currently valid license to drive in the Commonwealth of Virginia. She has held a valid driver's license for over 37 years. Ms. Ciotti has been using hand control devices while driving a vehicle for 14 years.

21. Ms. Ciotti is a consultant whose business requires her to travel into the District and throughout the metropolitan Washington D.C. area. Access to Flexcar at her home and in the District would make both business and personal travel easier for her.

22. During May 2007, Ms. Ciotti filled out an online application for and subsequently received membership in Flexcar.

23. The Flexcar website at www.flexcar.com, which Ms. Ciotti accessed to join Flexcar, contains inaccessible features and does not comply with website accessibility guidelines.

24. Upon information and belief, at the time Ms. Ciotti applied for her Flexcar membership, the online Flexcar Membership Agreement specifically stated that hand-controls would be available to assist in the operation of its vehicles.

25. Ms. Ciotti received a membership number of 78718, a Flexcard, and a Flexcar member manual.

26. Ms. Ciotti needs hand controls in order to be able to operate a vehicle.

27. Hand controls are devices that enable persons who are unable to operate the accelerator and brake pedals with their feet due to physical impairments to drive independently.

28. Generally, hand controls are operated in the following manner: a lever is connected to the pedals and mounted near the perimeter of the steering wheel. Using one's hand to move the lever in one direction will cause the vehicle to accelerate, while moving it in another direction will cause the vehicle to brake. For example, a person with a disability might push the lever towards the floor to accelerate, and towards the dashboard to brake. A spinner knob may also be attached to the steering wheel to give the driver added control.

29. Upon information and belief, many types of hand controls are available at a retail cost of a few hundred dollars.

30. Upon information and belief, many types of hand controls can be installed in under 15 minutes using simple tools, such as a wrench and screwdriver, and some with no tools at all.

31. The installation of hand controls does not prevent other drivers from using the gas pedal, brake pedal, or steering wheel to operate the vehicle nor does it cause any damage to the vehicle.

32. After Ms. Ciotti received her membership materials, she attempted to reserve a car that was located near her apartment building.

33. Ms. Ciotti contacted Flexcar to acquire hand controls for the car she was reserving.

34. Flexcar's regional manager, Ralph Burns, informed Ms. Ciotti that though the Flexcar website stated that it would provide hand controls, Flexcar does not and will not provide them.

35. Mr. Burns further informed Ms. Ciotti that Flexcar is in the process of rewriting the section of the website that states that hand controls would be available to assist disabled persons in operating its vehicles.

36. As of the filing of this Complaint, the section of the Flexcar website that stated that hand controls would be available to assist disabled persons in operating its vehicles has been deleted.

37. Flexcar's refusal to make hand controls available effectively renders Ms. Ciotti's membership with Flexcar unusable, because she is not able to operate its vehicles.

38. The Flexcar member manual that Ms. Ciotti received states that it is prohibited to allow someone who is not an approved member of Flexcar to drive a Flexcar vehicle.

39. The Flexcar member manual makes no exception for those who are providing assistance to a disabled member who does not drive -- such as a person with a visual impairment or seizure disorder -- despite said disabled member's willingness to be the financially responsible party under the car sharing agreement.

40. Violation of this prohibited use may result in termination of membership, a $300 fine, and imposition of personal liability for all damages caused by an accident.

41. The Flexcar member manual that Ms. Ciotti received also prohibits carrying animals in the vehicle, except in an airline-type travel carrier.

42. The Flexcar member manual makes no exception for service animals, as defined by the ADA, which cannot provide their designated functions if in an airline-type travel carrier.

43. Violation of this prohibited use results in a $200 fine.

44. Defendants' discriminatory conduct has directly injured Ms. Ciotti by denying her the full and equal enjoyment of Flexcar's goods, services, facilities, privileges, advantages, or accommodations.

45. Defendants' discriminatory conduct has directly injured the Equal Rights Center and its members by: (a) frustrating the Equal Rights Center's organizational mission of promoting equal access to facilities and services for disabled persons and eliminating discrimination against such persons in public accommodations in the greater Washington, D.C. metropolitan area; (b) causing the Equal Rights Center to devote scarce resources to identifying and attempting to remedy Defendants' unlawful discriminatory practices; and (c) interfering with the interests of the Equal Rights Center and its members in protecting their rights and the rights

of all residents of the greater Washington, D.C. metropolitan area to live and work in a community that is free from illegal discrimination.

## CAUSES OF ACTION

### COUNT I
### Flexcar's Violation of the Americans with Disabilities Act
### 42 U.S.C. § 12181 *et seq.*, 28 C.F.R. § 36.101 *et seq.*

### Failure to Remove Architectural Barriers

46. Plaintiffs adopt and incorporate each and every allegation in this Complaint as if set forth fully herein.

47. One of the seminal parts of the ADA is Title III, which covers nondiscrimination on the basis of disability by "Public Accommodations and Services Operated by Private Entities." 42 U.S.C. §§ 12181 *et. seq.*

48. Title III and its regulations cover a wide range of public accommodations, including private car dealerships, car rental agencies and car sharing companies. 42 U.S.C. § 12181(7).

49. Flexcar is a public accommodation within the meaning of the ADA because it is a private entity whose operations affect commerce and is a sales, rental or service establishment.

50. Title III of the ADA applies to Flexcar because it owns, leases to, or operates places of public accommodation.

51. Title III and its regulations prohibit public accommodations, such as Flexcar, from discriminating against disabled persons, including individuals with mobility impairments.

52. As relevant to the present action, discrimination includes "a failure to remove architectural barriers . . . in existing facilities, where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense." 28 C.F.R. § 36.304(a).

53. Under Title III and its regulations, Flexcar, after January 26, 1993, was required to make its facilities readily accessible to and usable by persons with disabilities.

54. Flexcar's vehicles constitute "facilities" under Title III and its regulations, defined as "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located." 28 C.F.R. § 36.104.

55. The regulations to Title III specifically list "installing vehicle hand controls" as a step that can be taken to remove an "architectural barrier in existing facilities". 28 C.F.R. § 36.304(b)(21).

56. Removal of the accessibility barriers in Flexcar's vehicles is readily achievable, structurally practicable and/or feasible.

57. Upon information and belief, these barriers are the result of Flexcar's corporate policies, practices, and procedures and/or the absence of policies, practices, or procedures for enforcing the ADA.

58. Because the Flexcar vehicles are strategically located throughout the Washington D.C. metropolitan area, Plaintiffs have attempted to use its services or would use its services, but for their personal knowledge and/or actual notice of the barriers.

59. Failing to remove the barriers in Flexcar's vehicles constitutes unlawful discrimination on the basis of disability insofar as it denies Plaintiffs the full and equal enjoyment of Flexcar's goods, services, facilities, privileges, advantages and/or accommodations.

60. Unless enjoined by this Court, Flexcar will continue to violate the mandates of the ADA.

## COUNT II
### Flexcar's Violation of the Americans with Disabilities Act
### 42 U.S.C. § 12181 *et seq.*, 28 C.F.R. § 36.101 *et seq.*

### Failure to Modify Policies and Procedures: Service Animals

61. Plaintiffs adopt and incorporate each and every allegation in this Complaint as if set forth fully herein.

62. Title III and its regulations require a public accommodation such as Flexcar to "make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a).

63. The regulations to Title III specifically state that a public accommodation, such as Flexcar, "shall modify its policies, practices, or procedures to permit the use of a service animal by an individual with a disability." 28 C.F.R. § 26.302(c).

64. Flexcar's policy of fining members for violating its policy that prohibits carrying animals in the vehicle, except in an airline-type travel carrier, a policy that would render the service animal ineffectual, runs afoul of Title III and its regulations.

65. To the extent that compliance with the ADA will require modifications to Flexcar's policies, practices or procedures or other steps necessary to prevent the denial of services to disabled individuals, such modifications will not fundamentally alter the nature of the

goods, services, facilities, privileges, advantages, or accommodations offered by Flexcar or otherwise result in an undue burden.

66. Flexcar's corporate policies, practices, and procedures and/or the absence of policies, practices, or procedures for enforcing the ADA constitute unlawful discrimination insofar as they deny Plaintiffs the full and equal enjoyment of Flexcar's goods, services, facilities, privileges, advantages, or accommodations.

67. Therefore, Flexcar is in violation of Title III of the ADA and its corresponding regulations and guidelines.

68. Unless enjoined by this Court, Flexcar will continue to violate the mandates of the ADA.

## COUNT III
### Flexcar's Violation of the Americans with Disabilities Act
### 42 U.S.C. § 12181 *et seq.*, 28 C.F.R. § 36.101 *et seq.*

### Failure to Modify Policies and Procedures: Alternative Driver

69. Plaintiffs adopt and incorporate each and every allegation in this Complaint as if set forth fully herein.

70. As stated above, Title III and its regulations require a public accommodation such as Flexcar to "make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a).

71. Flexcar's blanket policy prohibiting non-members of Flexcar from driving a Flexcar vehicle for a member prevents family members, aides or assistants from driving for a

disabled member who cannot do so his or herself, despite said disabled member's willingness to be the financially responsible party, and thereby runs afoul of Title III and its regulations.

72. To the extent that compliance with the ADA will require modifications to Flexcar's policies, practices or procedures or other steps necessary to prevent the denial of services to disabled individuals, such modifications will not fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations offered by Flexcar or otherwise result in an undue burden.

73. Flexcar's corporate policies, practices, and procedures and/or the absence of policies, practices, or procedures for enforcing the ADA constitute unlawful discrimination insofar as they deny Plaintiffs the full and equal enjoyment of Flexcar's goods, services, facilities, privileges, advantages, or accommodations.

74. Therefore, Flexcar is in violation of Title III of the ADA and its corresponding regulations and guidelines.

75. Unless enjoined by this Court, Flexcar will continue to violate the mandates of the ADA.

## COUNT IV
### Flexcar's Violation of the Americans with Disabilities Act
### 42 U.S.C. § 12181 et seq., 28 C.F.R. § 36.101 et seq.

### Failure to Provide Access to Website

76. Plaintiffs adopt and incorporate each and every allegation in this Complaint as if set forth fully herein.

77. Title III and its regulations require a public accommodation such as Flexcar to ensure that people with disabilities have "full enjoyment" of the goods, services, facilities, privileges, advantages, or accommodations of a covered accommodation. 42 U.S.C. § 12182(a).

Indeed, the statute expressly states that the denial of equal "participation" or the provision of "separate benefit[s]" are actionable under Title III. 42 U.S.C. § 12182(b)(1)(A).

78. Flexcar's company website constitutes a good, service, facility, privilege, advantage, or accommodation provided by Flexcar.

79. Flexcar's failure to provide access to its company website constitutes unlawful discrimination and violates Title III and its regulations, in that individuals with disabilities do not have access to the full enjoyment of, or equal participation in, the company website.

80. Therefore, Flexcar is in violation of Title III of the ADA and its corresponding regulations and guidelines.

## COUNT V
### District of Columbia's Violation of the Americans with Disabilities Act
### 42 U.S.C. § 12132 *et seq.*, 28 C.F.R. § 35.130 *et seq.*

81. Plaintiffs adopt and incorporate each and every allegation in this Complaint as if set forth fully herein.

82. The District Defendants are "public entities" within the meaning of Title II of the ADA.

83. The District Defendants have, since the effective date of the ADA, subsidized Flexcar, a business that is not readily accessible or usable by persons with disabilities, by providing free parking spaces throughout the District of Columbia.

84. The District Defendants' policy and practice of subsidizing Flexcar without regard to whether Flexcar is accessible to people with mobility impairments violates the ADA by excluding them from participation in and denying them the same opportunity as non-disabled persons to the benefits of Flexcar because of their disability.

85. The District Defendants violate Title II of the ADA and its regulations because they have directly or through other arrangements on the basis of disability "aided or

- 15 -

perpetuated discrimination against qualified individuals with disabilities by providing significant assistance to an agency, organization or person that discriminates on the basis of disability" in violation of 28 C.F.R. § 35.130(b)(1)(v).

## COUNT VI
### Flexcar's Violation of the D.C. Human Rights Act
### D.C. Code § 2-1401.01 *et seq.*

86. Plaintiffs adopt and incorporate each and every allegation in this Complaint as if set forth fully herein.

87. Flexcar is a public accommodation within the meaning of the DCHRA as it deals in goods and/or services.

88. The barriers in Flexcar's District of Columbia vehicles constitute an unlawful discriminatory practice because, wholly or partially for a discriminatory reason based on disability, they have the effect of denying Plaintiffs the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations offered by a place of public accommodation.

89. Upon information and belief, these barriers are the result of Flexcar's corporate policies, practices, and procedures and/or the absence of policies, practices, or procedures for enforcing the DCHRA.

90. Flexcar's corporate policies, practices, and procedures and/or the absence of policies, practices, or procedures for enforcing the DCHRA constitute unlawful discrimination because they deny Plaintiffs, wholly or partially for a discriminatory reason based on disability, with the full and equal enjoyment of Flexcar's goods, services, facilities, privileges, advantages, or accommodations.

91. The barriers in Flexcar's District of Columbia vehicles and its corporate policies, practices, and procedures resulting in these barriers and/or the absence of policies, practices, and procedures for enforcing the ADA and DCHRA, are not necessary for the conduct of Flexcar's business.

92. Plaintiffs have encountered barriers to accessibility, and/or have effectively been denied the opportunity to utilize Flexcar's car sharing services.

93. These barriers have caused Plaintiffs damages in an amount to be determined at trial.

94. Because the Flexcar vehicles are strategically located throughout the Washington D.C. metropolitan area, Plaintiffs have attempted to use its services or would use its services, but for their personal knowledge and/or actual notice of the barriers.

95. Unless enjoined by this Court, Flexcar will continue to violate the mandates of the DCHRA.

## COUNT VII
### District of Columbia's Violation of the D.C. Human Rights Act
### D.C. Code § 2-1401.01 *et seq.*

96. Plaintiffs adopt and incorporate each and every allegation in this complaint as if set forth fully herein.

97. The District Defendants have been subsidizing Flexcar, a business that is not readily accessible or usable by persons with disabilities, by providing free parking spaces throughout the region.

98. The District Defendants' policy and practice of subsidizing Flexcar without regard to whether Flexcar is accessible to people with mobility impairments subjects qualified

persons with disabilities to discrimination and excludes them from participation in and denies them the benefits of the services of Flexcar.

99. The District Defendants' policy and practice of subsidizing Flexcar without regard to whether Flexcar is accessible to people with mobility impairments provides qualified persons with disabilities an aid, benefit or service that is not as effective in affording equal opportunity to obtain the same result, gain or benefit as that provided to others.

100. These actions and inactions constitute violations of the DCHRA.

101. These actions and inactions have caused Plaintiffs damages in an amount to be determined at trial.

## CLAIM FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the following relief:

(a) A judgment, pursuant to 28 U.S.C. § 2201, declaring that defendants Flexcar and the District Defendants' conduct as alleged herein violates the laws and regulations of the United States and the laws and regulations of the District of Columbia;

(b) An injunction or writ, pursuant to 28 U.S.C. § 1651, and other grants of equitable authority, ordering defendant Flexcar: (1) to cease violating the ADA and the DCHRA; and (2) to bring its facilities, policies, practices, and procedures into compliance with the ADA and the DCHRA; and ordering the District Defendants to immediately cease and permanently stop subsidizing Flexcar in the form of providing exclusive cost-free parking for its vehicles in violation of the ADA and the DCHRA;

(c) An award of money damages to the Plaintiffs in an amount to be proven at trial;

(d) An award of reasonable attorneys' fees, costs, and other expenditures resulting from bringing this action, pursuant to 42 U.S.C. § 12205 and D.C. Code § 1403.16; and

(e) Grant such other relief as the Court may deem just and proper.

Respectfully Submitted,

*[signature]*

Barbara K. Kagan, Bar No. 252692
Cynthia L. Quarterman, Bar No. 417700
Matthew I. Kepniss, Bar No. 490856
Steptoe & Johnson, LLP
1330 Connecticut Avenue
Washington, DC 20036
(202) 429-3000
(202) 429-3902 (fax)

- and -

*[signature]*

E. Elaine Gardner, Bar No. 271262
Washington Lawyer's Committee for Civil Rights
and Urban Affairs
11 Dupont Circle, NW Suite 400
Washington, DC 20036
(202) 319-1000 ext. 131
(202) 319-1010 (fax)

Dated: October 10, 2007